[No. 13011. Department One. August 14, 1916.]

A. E. FORRER, *Appellant,* v. DAVIS & COMPANY *et al.,*
*Respondents.*[1]

BROKERS—COMPENSATION — CONTRACT — EVIDENCE — SUFFICIENCY.
Findings that a broker had completed a contract of sale which was
surrendered upon the owner's agreeing to pay the customer $100 in
order to make a more favorable sale, will not be disturbed, where the
evidence was conflicting and the owner's denial was contradicted by
his own statements and by a written contract of sale signed by him.

SAME. Although a broker, who made a sale at the list price,
which was surrendered by consent in order to make a more favor-
able sale, is not entitled to double commissions unless there is a
specific agreement therefor, findings that such an agreement was
made will not be disturbed on appeal where the evidence was con-
flicting, and the evidence to the contrary was shown to rest upon a
faulty memory after a lapse of two years and eight months.

Appeal from a judgment of the superior court for King
county, Dykeman, J., entered March 12, 1915, upon findings
in favor of the defendants, in an action for equitable relief,
tried to the court. Affirmed.

*Shorett, McLaren & Shorett,* for appellant.

*Robert F. Booth,* for respondent.

FULLERTON, J.—In January, 1912, the appellant, Forrer,
being then the owner of certain real property situated in the
city of Seattle, listed the same for sale with the respondent
John Davis & Company, a real estate broker doing business
in the city named. The respondent sold the property before
the end of January to a purchaser found by it on terms satis-
factory to the appellant. The sale as consummated involved
the execution of a mortgage on the property by the appel-
lant to the respondent, a deed from appellant to the pur-
chaser, and a mortgage from the purchaser to the appellant.
Subsequently certain complications arose, not made very

[1]Reported in 159 Pac. 696.

clear by the record, which induced the purchaser to deed the property to another person in trust, who subsequently placed another mortgage upon the property. The sale also involved money transactions between the appellant and the respondent.

In February, 1914, the appellant brought this action against the respondent, the purchaser, and the other persons connected with the subsequent transactions, to set aside as fraudulent the several instruments. He also set forth the transactions with the respondent, and as an alternative prayer to his complaint, asked, in case the instruments could not be set aside and cancelled and the parties restored to their original position, that an accounting be had between himself and the respondent, and that he recover on such accounting the amount found to be due, averring that there was due $540.67.

At the trial, after issue joined, no attempt was made to prove the fraudulent nature of the instruments, and the case proceeded as for an accounting between the appellant and the respondent. The evidence introduced on this branch of the case was conflicting. The respondents' evidence tended to show that, after listing the property, they sold it to one Shull for the list price and on the terms on which they had it listed, namely, for thirty-five hundred dollars, one thousand dollars of which was to be paid in cash, and the balance in monthly installments of twenty-five dollars each, the deferred payments to be secured by a mortgage upon the property; that on this sale a deposit of fifty dollars was made, which was forthwith turned over to the appellant; that, on the next day, they found another purchaser who agreed to take the property at thirty-nine hundred dollars, and that, with the consent of the appellant, they made a new contract with him, finally consummating the sale on terms which the appellant approved; that this sale involved the repayment to the first contractor of the fifty dollars advanced by him with one hundred dollars additional, and also the payment of

certain expenses, and of certain taxes due, and that these sums, together with the agreed commissions and the sums deposited to the appellant's credit, fully accounted for all the moneys they had received out of the transactions belonging to the appellant.

The appellant testified that there was but one contract of sale, the contract with the person with whom the sale was finally consummated; that he never knew Shull in transactions at all; and that the respondent had accounted only for the list price of the property, not for the amount for which the sale was actually made.

The trial court allowed a recovery of $51.22, which it found the respondent had paid as taxes for which the appellant was not liable; finding for the respondent in favor of the other items of expenditure involved.

If we are to allow the items credited the respondent by the trial court, the account balances. Of these the only ones concerning which there can be any serious dispute is the item of $100 paid to Shull for the surrender of his contract, and an item of $175 retained as a commission because of the contract of sale with Shull. The first depends for its correctness on whether or not there was in fact a contract of sale entered into with Shull, which Shull afterwards surrendered with the appellant's knowledge and consent. While the appellant testifies with some positiveness that he knew nothing of the transaction, we think the evidence clearly shows his memory to be at fault. Not only is it contrary to the testimony of Shull himself and to the testimony of the employee of the respondent who conducted the sale, but it is contrary to the written contract of sale with Shull, which bears the appellant's signature as owner of the property. If he entered into a contract of sale with Shull and afterward consented to its surrender, he cannot, under the circumstances shown here, repudiate the consideration paid for the surrender. We think the preponderance of the evidence is that he did enter into the contract and did consent to its surrender.

As to the second item, the proofs are not so satisfactory. In listing the property with the respondent, the appellant agreed to pay the usual commission in such cases. In such a contract, the obligation to pay a commission to the broker arises only in case of a sale of the property. The broker cannot thereunder double his commission by entering into a contract of sale with one person, procuring its surrender, and then making a sale to a second person, even though the change be made with the consent of the owner. Before such additional commission can be charged, there must be an agreement between the broker and the owner to that effect. Whether such an agreement was made here arises rather from evidence relating to the conduct of the parties than from any positive evidence to that effect. The court found that the appellant was "duly conversant with all of the . . . transactions, and knew each and every detail thereof;" finding in effect that he knew of this claim on the part of the respondent and consented thereto. While the appellant testified to the contrary, we believe honestly, we again think his testimony was due to a faulty, memory. It was over two years after the events before he made complaint of the account, and two years and eight months had elapsed before he was called upon to testify concerning it. His memory is conclusively shown to have been at fault concerning certain of the matters, and this raises a strong probability that he was mistaken concerning the particular item. At any rate, we do not feel justified, on the face of the record, in setting aside the finding of the trial judge.

The judgment is affirmed.

MORRIS, C. J., MOUNT, CHADWICK, and ELLIS, JJ., concur.